IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL MYVETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO.    12 CV 9464 |
| vs. | ) | |
| | ) | JUDGE THARP |
| CHICAGO POLICE DETECTIVE EDWARD | ) | |
| HEERDT, STAR NO. 20598;  et al., | ) | MAG. JUDGE MARTIN |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTIONS IN LIMINE**

Now comes the Plaintiff, Paul Myvett, by and through his attorneys, the Law

Offices of Jeffrey J. Neslund, and the Law Offices of Robert Robertson in connection

with the impending trial herein, submits the following motions in limine.  In support

thereof Plaintiff states as follows:

*Motion in Limine # 1*

**Motion to bar any testimony from the Defendants or argument from defense counsel
that the Plaintiff assisted Wilbur Jackson in retaining control of the gun that
Wilbur Jackson used to shoot Reginald Allen**

Plaintiff moves to bar any speculative testimony, argument or suggestion by the

defense that the Plaintiff assisted Wilbur Jackson in retaining control of the gun that was

used by Jackson to shoot Reginald Allen.  There is no evidence that the Plaintiff did

anything to assist, aid, or abet Jackson in shooting Allen.  The security video from the

White Castle restaurant does not show the actual shooting. Nor does the video show any

struggle for control of the gun while Jackson and Allen are on the floor. Further, Allen

has denied that the Plaintiff that did anything to assist Jackson in retaining control of the

gun, both at the criminal trial as well in his deposition in this case.  Lastly, Defendant

Det. Almdale has conceded that statements in his report purportedly from Allen regarding Myvett's role in any struggle for control of the gun were incorrect and based on speculation by himself and Defendant Det. Heerdt. Any argument, suggestion or insinuation that the Plaintiff somehow helped Jackson to retain control of the gun is pure speculation, extremely prejudicial and without any factual basis. As such, testimony from the Defendants or argument by their counsel in this fashion should be barred.

### A. Original police reports falsely state Plaintiff is the shooter

Plaintiff, Paul Myvett, has alleged in this case that the Defendants fabricated evidence against him and conspired to maliciously prosecute him for a shooting incident that occurred around 2:30 a.m. in a White Castle restaurant on November 27, 2010. The official CPD Arrest Reports and CPD Original Case Incident Report state that the Plaintiff, Paul Myvett, was ***positively identified*** at 2:51 a.m. as the offender who pulled out a handgun and shot the victim, Reginald Allen, in the leg. (See Ex. A, Arrest Rpt. p. 5 & Ex. B, Incident Rpt. p. 4). Defendant Sgt. Barker, who supervised the "show up" identification procedure at the White Castle restaurant, testified that no witnesses specifically identified the Plaintiff as either (1.) possessing a handgun or (2.) shooting the victim, Mr. Allen. (see Barker dep, p.161-165, attached as Ex. C). Furthermore, it is undisputed that the Defendants learned that Allen told a police officer before being taken away from the White Castle in an ambulance that the man who shot him had shoes with red shoelaces; Wilbur Jackson was the individual who was wearing red shoelaces – not the Plaintiff.

**B. White Castle video does not show the Plaintiff fighting with Allen or engaged in any struggle for control of the gun**

Prior to the time the Arrest Report and Incident Report identifying Plaintiff as the shooter were written and submitted for approval, the Defendant Detectives had in their possession security video footage from the White Castle. Detective Heerdt reviewed the security video at the restaurant before he relocated to the 20th District to begin interviewing witnesses. Although the security video does not show the actual shooting, the video conclusively established that the Plaintiff had left the restaurant and was *outside* at the point in time when a gun was produced during the fight between Reginald Allen, Wilbur Jackson and others.

The video also establishes that Plaintiff returned to the restaurant and is present with others within the establishment at the time of the shooting. However, there is no evidence that Plaintiff did anything to aid abet or assist Jackson in retaining the control of a gun or otherwise assist Jackson in shooting Allen. Defendant Almdale testified that in reviewing the video you cannot see a struggle for the gun. (See Almdale dep. p. 274:2, attached as Ex. D)

**C. Det. Almdale admits statements in his report purportedly from Allen regarding Myvett are incorrect and based on speculation**

After the Arrest Report and Incident Report identifying Plaintiff as the shooter were approved by supervisors, including Defendant Sgt. Barker, the Defendant Detectives interviewed Allen at the hospital in the afternoon on November 27, 2010. It is undisputed that Mr. Allen positively identified Wilbur Jackson as the individual who shot him in the leg. Mr. Allen denied, both in the criminal trial and at his deposition, that he was struggling on the ground with Plaintiff, Paul Myvett, for control of the gun before he was shot. Mr. Allen further testified that the last time he saw the Plaintiff, he was getting

kicked by Mr. Allen's friend, Brien Smothers, on the other side of the restaurant. (See Allen dep., p. 65:6-24, p.66:1; p.120:2-21, attached as Ex. E).

In their Supplemental Report, the Defendant Detectives state that Allen specifically told them that the Plaintiff, Myvett, jumped on his back during the struggle and was punching him as they fell to the ground. (See Ex. F, Det. Supp. Rpt., p. 23). However, Almdale testified at his deposition that Reginald Allen did not actually say that he was struggling with Myvett:

Q.: Are you saying Reginald Allen told you that?

A.: Reginald didn't tell us that. That's what we believed from watching the video. The videos a little grainy and since Myvett and Jackson were right there when the shots were fired, ***we speculated that that's who he was initially engaged in a fight with."*** (Ex. D, Almdale dep., p. 262:6-11)(emphasis added).

The Defendant Detectives also put in their supplemental report that Allen told them at the hospital he was "100% certain" that Myvett was the other person struggling for control of the gun. (Ex. F). However, Allen has repeatedly denied making any statements to the detectives about struggling with Myvett for control of the gun. (see Ex. E). In addition, Detective Almdale testified that the statements purportedly made by Allen regarding Myvett in his report are incorrect and based on speculation:

Q.: and that was you speculating, correct?

A.: yes.

Q.: You know you're wrong about that, correct?

A.: after viewing the video, yes. (Ex. D, Almdale dep. p. 263:18-21).

Detective Almdale further testified:

Q.: Would you agree with me that the way you wrote your report makes it sound

that Reginald Allen identified Paul Myvett as jumping on his back?

Ms. Harris: objection, calls for a legal conclusion, assuming facts not in evidence.

**Witness: yes.**

Q: And that's not a correct statement, right?

**A.: It is not a correct statement.**  (Ex. D, Almdale dep., p. 264 :8-16)(emphasis

added).

**Argument**

In light of the lack of evidence that the Plaintiff did anything to assist Jackson in

retaining control of the gun, the Defendants and their counsel should be barred from

arguing or suggesting to the jury that the Plaintiff is somehow accountable for the

shooting.  By Defendant Almdale's own admission, he and Defendant Detective Heerdt

were ***speculating*** as to what occurred once Jackson and Allen hit the floor.

It is undisputed there is no video evidence of any struggle to retain control of the

gun that involved the Plaintiff.  In addition, Mr. Allen has repeatedly denied that he

struggled with Plaintiff control of the gun.  Further, the Defendant Detectives concede

that the statements in their report attributed to Allen regarding a struggle with Myvett for

control of the gun incorrect and based on speculation.  There is simply no factual basis

from this record to allow the Defendants to testify that the Plaintiff assisted Allen in

retaining control of the gun prior to the shooting.

Defendants should not be allowed to engage in rank speculation and theory to

craft yet another basis for purported criminal responsibility regarding Mr. Myvett.  First,

Myvett was initially characterized in reports as the "shooter;" this fell apart when there

was absolutely no eyewitness identification or any other evidence to support that claim. Next, the detectives claim that witnesses identified Mr. Myvett as pulling out a gun and passing it to Mr. Jackson; this fell apart when the White Castle video demonstrated that was impossible as the video conclusively established Myvett was *outside* the restaurant when a gun was pulled during the fight in the restaurant. Next, Paul Myvett was jumping on the back of Reginald Allen and struggling with him for control of the gun; this fell apart when Allen repeatedly denied making such statements and Almdale admitted this theory of accountability was pure speculation.

Any arguments in support of defense theories in the case must be based on reasonable inferences from the evidence. Testimony from the Defendants or argument from their counsel that Plaintiff was assisting Wilbur Jackson in retaining control of the gun improperly invites jury into the realm of speculation. The only possible purpose and effect of such testimony by the Defendants regarding what they believed happened out of camera view on the floor at the White Castle would be to invite the jury to speculate that Plaintiff acted in the ways the Defendants falsely portrayed the Plaintiff in their reports. Such speculative testimony is heavily prejudicial as Defendants present a worse- case scenario in which Myvett jumps on Allen's back, punches him in the head and bites his hand- all in an attempt to assist Jackson in retaining control of the gun. There is simply no evidence that the Plaintiff acted in the manner described by the Defendants. Associating Plaintiff with this kind of criminal behavior- without any factual basis whatsoever- is obviously prejudicial and would deny Plaintiff a fair trial.

*Motions in Limine # 2*

**Defendants should be barred from arguing or introducing evidence regarding the status of discovery in the criminal case.**

Defendants should be barred from introducing evidence or argument regarding the status of discovery in the criminal case because that evidence is irrelevant and should be excluded pursuant to Federal Rules of Evidence 401 and 402.  This Court granted summary judgment on the *Brady* portion of Plaintiff's claims, and as such, the status of discovery in the criminal case – what was tendered to the defense and when it was tendered - does not have any relevance to the whether witness statements were fabricated, whether Plaintiff was maliciously prosecuted, or whether Defendants conspired to violate Mr. Myvett's rights.

Even if there is some minimal probative value to this evidence, it should still be excluded pursuant to Federal Rule of Evidence 403.  Evidence concerning what evidence was tendered in a separate and distinct proceeding is collateral to the issues in this case. Without a detailed understanding of how the criminal justice system works up through trial, including the discovery process, a jury will be unable to appreciate any such evidence and put it in the proper prospective.  In a similar vein, this evidence could create confusion regarding what evidence was presented in which proceeding and the relevance thereof.  Finally, this evidence regarding evidence in a separate proceeding could distract the jury from the central issues of this case and influence them to decide the case on factors other than the merits of the case.

*Motion in Limine # 3*

**Defendants should be barred from eliciting any opinion testimony or legal conclusions from any Assistant State's Attorney concerning any of the elements of the criminal offense or civil claims, the correctness of the actions of the Defendants, or general or typical policies and procedures**

Defendants should be precluded from eliciting any evidence from any Assistant State's Attorney regarding the elements of the underlying criminal offense, elements of any of the civil claims, or the correctness of any of the Defendants' actions in investigating the case. Any such testimony would constitute previously undisclosed expert testimony. If not expert testimony, it would constitute improper lay opinion testimony to the ultimate issues in the case that would erroneously invade the province of the fact-finder. Such opinion testimony should be excluded as it has never been disclosed, is not relevant and its prejudicial effect would outweigh any legitimate minimal probative value.

Any personal opinion testimony expressed by an assistant State's Attorney would be improper and would only serve to invade the province of the fact-finder. Any such witness, who would be cloaked with an air of authority and legitimacy from their position, should not be able to testify to any element of any of the criminal charges or the civil claims. As such, Defendants should not be allowed to elicit testimony that 1) there was probable cause present; 2) that Paul Myvett was accountable for Wilbur Jackson's actions; 3) Defendants did not act willfully; 4) Defendants did not violate Mr. Myvett's due process rights; and 5) Defendants did not conspire. Nor should any such witness be able to offer explanations as to the pertinent criminal law, including the law of accountability, or explain why in her opinion the trial judge case was directed out against

Mr. Myvett. The opinion of any one individual on any of these topics goes to the heart of the case and would necessarily improperly influence the jury. This is particularly so given their position of authority and public trust. As such, this evidence should be excluded pursuant to Federal Rule of Civil Procedure 26 and Federal Rules of Evidence 401, 402, and 701. *Zitzka v. Village of Westmont*, 2011 WL 4738249 (N.D. Ill 2011); *see also Aponte v. City of Chicago*, 2011 WL 1838773 (N.D. Ill. 2011).

For similar reasons, the assistant State's Attorney should also not be able to testify to the correctness of the Defendants' actions, how Defendants' actions comport with the actions of other officers on other cases, or offer possible explanations that would serve to exonerate Defendants' conduct. This is so even if veiled in a discussion of general policies and procedures or what "typically" happens in a criminal case. Any such testimony would be irrelevant on the grounds of personal opinion or on the grounds that such information is not relevant to the case before the jury. Simply put, Defendants should not be able to retry the criminal case with a prosecutor as their narrator or attempt to improperly bolster the character of the Defendants. Any attempt to inject improper character evidence of the Defendants through a prosecutor (i.e, "I've worked many cases with this detective, he is always professional and would never frame anyone") should be barred pursuant to Rule 402 and 404.

Even if there were some legitimate probative value, the prejudicial effect substantially outweighs it and, thus, the evidence should be excluded pursuant to Federal Rule of Evidence 403. Here the *legitimate* probative value of this evidence is negligible at best – basically providing a general understanding of the criminal justice system. In contradistinction, the prejudicial value is obvious and irreparable. This information

would: 1) come from a witness that would have an imprimatur of authority, thereby exacerbating the prejudicial effect; 2) involve a subject matter on which the Court would be instructing the jury, thereby leading to potential confusion; 3) involve a complex specialized field of knowledge; 4) would divert the jury from its task of examining the conduct of the Defendants and redirect it towards the Plaintiff; 5) would make a collateral proceeding, albeit related, the central focus of the civil proceeding that could result in effectively retrying the criminal case when such case has already been tried and the Plaintiff acquitted. Considering all of these factors, the admission of any such testimony would be rife with the possibility of error and should be excluded pursuant to Federal Rule of Evidence 403.

### *Motion In Limine #4*

**Defendants Should Be Barred From Questioning Any Witness Or Introducing Evidence Regarding Any Of Plaintiff's Prior Convictions or Arrests**

Defendants should be barred from introducing the Plaintiff's criminal history under any evidentiary theory as doing so would serve to irreparably prejudice the Plaintiff in a case where is credibility is paramount. Plaintiff's collection of small time arrests, older convictions, and convictions that do not involve hallmarks of dishonesty should not be admitted as they fall outside of Federal Rules of Evidence 608 and 609 and should be excluded pursuant to Rule 403 considering their significant prejudicial value.

A. Plaintiff's Prior Convictions

1. Felony Convictions

Plaintiff first seeks to exclude his three (3) felony convictions from being introduced into evidence. Plaintiff's three felony convictions are: 1) Aggravated DUI in

07CR1500601 for which he received 18 months in the Illinois Department of Corrections on August 8, 2007 and was discharged from parole in February 2015; 2.) an unlawful use of a weapons conviction in 00CR5407 for which he received 2 years in the Illinois Department of Corrections on March 22, 2000; and 3.) a 1998 conviction for possession of a controlled substance for which he received 14 months probation and 15 days CCDOC on December 8, 1998, with his probation terminated satisfactory February 3, 2000.

Only one of Plaintiff's three convictions, the Aggravated DUI, falls within the ambit of Federal Rule of Evidence 609(a). Under that section, evidence of a prior conviction that occurred within the last ten years is still subject to the balancing test encapsulated in Federal Rule of Evidence 403. Weighing those factors and consideration, Plaintiff would request that this conviction be barred because its admission would unfairly prejudice him and has limited probative value on his credibility. A traffic offense such as DUI is not the type of criminal offense that goes to truth or veracity. Given the strong opinions potential jurors may have regarding drunk drivers, there is a very real danger that jurors would deny the Plaintiff recovery, not because his constitutional rights were not violated, but because they find him unworthy of recovery due to his past drunk driving offenses.

Plaintiff's two older felony convictions re governed by Federal Rule of Evidence 609(b), which makes it much more difficult to admit prior convictions that are greater than 10 years' old. Here, Plaintiff's conviction and completion of sentencing for both the possession of a controlled substance and unlawful use of a weapon both occurred more than 10 years ago. As such, Defendants must show that the probative value of these

convictions substantially outweighs their prejudicial effect. This they cannot do.

"[C]ourts should be careful to ensure that a civil rights plaintiff's criminal past is not used to unfairly prejudice him or her." *Gora v. Costa*, 971 F.2d 1325, 1331 (7th Cir. 1992). "In exercising discretion on admission of prior convictions, the court must consider several factors, most importantly the danger of unfair prejudice. When the prior conviction and the charged act are of a similar nature, the danger increases. The jury is more likely to misuse the evidence for purposes other than impeachment, that is, to regard the prior convictions as evidence of a propensity to commit crime or of guilt, despite instructions to the contrary." *United States v. Shapiro*, 565 F.2d 479, 481 (7th Cir. 1977) (citations omitted); see also *United States v. Harding* 525 F.2d 84, 90 (7 Cir. 1975)(noting that the similarity between a prior drug offense and the present drug offense created a strong risk of unfair prejudice); *Brandon v. Village of Maywood*, 179 F. Supp. 2d 847, 854 (N.D. Ill. 2001) (" The main issue for both of his claims is whether the officers had reasonable suspicion to believe that he was involved in a drug transaction, and a jury might improperly consider evidence of his prior convictions for similar offenses as an indication that the officers had a reason to suspect him of the same activity here.").

Moreover, even if probative to a material issue, the value of this evidence is substantially outweighed by the danger of confusion and unfair prejudice as it tends to subordinate reason to emotion in the fact-finding process by influencing the jury to factor Plaintiff's criminal history into its deliberations. This will cause the jury to focus on the underlying criminal behavior, rather than on the conviction itself that is relevant for purposes of determining the Plaintiff's credibility. In particular, the Plaintiff's past

unlawful use of a weapons conviction would be particularly prejudicial in this case, which involved Plaintiff's alleged involvement in a shooting. Even though that conviction was over a decade old, its mere introduction would unfairly change the face of the entire case.

Even if any of these convictions are within the framework established under Rule 609, courts may permit the sanitization of prior crime evidence used to impeach by concealing the nature or name of the crime. *Schmude v. Tricam Inc.,* 556 F. 3d 624, 627 (7th Cir. 2009)(citing *United States v. Stokes*, 211 F. 3d 1039, 1042-43 (7th Cir. 2000)). The danger of unfair prejudice from the admission of any of these charges could be substantial. There is a significant risk that the jury will improperly discount Plaintiff's testimony and his claims merely because he was previously convicted of criminal behavior, and not because evidence of his prior criminality reflects on his truthfulness.

In a similar vein, any detailed evidence involving these convictions should be excluded because it fails to meet the requirements of admissibility established under Federal Rule of Evidence 404(b). The particular facts of the underlying convictions constitute negative character evidence that is not relevant to any material issue; instead it impermissibly would be offered to establish the general character of the Plaintiff. Moreover, even if probative to a material issue, the value of this evidence is substantially outweighed by the danger of confusion and unfair prejudice as it tends to subordinate reason to emotion in the fact-finding process by influencing the jury to factor Plaintiff's criminal history into its deliberations. The danger of substantial unfair prejudice increases substantially with the admission of each additional underlying fact as such facts serve only to describe unrelated criminal actions that are not at issue in this case. This

will cause the jury to focus on the underlying criminal behavior, rather than on the conviction itself that is relevant for purposes of determining the Plaintiff's credibility.

Misdemeanor Convictions

Plaintiff seeks to exclude evidence of his 4 misdemeanor convictions, three of them being traffic offenses, as none of these misdemeanor convictions involve any indication of dishonesty or a lack of credibility on Plaintiff's part. Moreover, the prejudicial value of this evidence would outweigh any minimal probative value.

Specifically, Plaintiff seeks to exclude the following misdemeanor convictions: a) driving on a suspended license in 06110398201 for which he received 30 days in the Cook County Department of Corrections on May 5, 2006; b) driving on a suspended license in 05115219701 for which he received 30 days in the Cook County Department of Corrections on that same May 5th 2006 date; c) driving under the influence in TM084770 for which he received 24 months conditional discharge on May 30, 2007; and 4) reckless conduct in 09125350401, for which he received 1 day in CCDOC on November 6, 2009.

None of these offenses involve theft or any of the hallmarks of dishonesty. Admitting these offenses under effectively allow the admission of any offenses under the theory that any infraction of the law is in some way dishonest. Moreover, there is certainly a prejudicial effect to the number of the misdemeanor convictions in general as well as additional prejudicial value from the driving under the influence conviction and the reckless conduct conviction. The latter two convictions both could cause the jury to have an unfairly negative opinion of the Plaintiff and could influence them to decide the

case on factors other than the merits of the case.  These convictions should be excluded pursuant to Federal Rules of Evidence 403 and 609.

B.     Plaintiff's Prior Arrests

Plaintiff seeks to bar any evidence or questioning concerning any of his felony, misdemeanor, or traffic offenses that did not result in a conviction. The mere fact of an arrest is not relevant to any issue material in this case and should be excluded pursuant to Federal Rules of Evidence 401 and 402.

It is well established that in general a witness is arrest record will not be admissible. *Thompson v. City of Chicago*, 722 F 3d 963, 977 (7th Cir. 2013). This rule is based upon a clear recognition of the fact that the probative value of such evidence is so overwhelmingly outweighed by its inevitable tendency to inflame and prejudice the jury against the [party /witness] that total and complete exclusion is required in order that the right to trial by a fair and impartial jury may not be impaired. *Barber*, 725 F.3d at 709.

Moreover, evidence of prior arrests would also be inadmissible under Federal Rule of Evidence 404(b).  Prior arrests are usually inadmissible under Federal Rule of Evidence 403, which bars evidence when its probative value is outweighed by its risk of prejudice, and Federal Rule of Evidence 404(b), which provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," but "may ... be admissible for other purposes." Fed.R.Evid. 403 & 404(b); *see Cruz v. Safford,* 579 F.3d 840, 845 (7th Cir.2009) (finding that the district court did not abuse its discretion by excluding evidence of seven prior

arrests since the probative value of the prior arrests was outweighed by the risk of prejudice).

<u>*Motion in Limine # 5*</u>

**Plaintiff Should Be Allowed To Call Police Officer Witnesses As Hostile Witnesses**

Plaintiff should be permitted to call and treat police officers as adverse witnesses. Calling a person as an adverse witness and the use of leading questions upon direct examination is governed by Federal Rule of Evidence 611(c). In relevant part, Rule 611(c) provides that leading questions can be used: "When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." Police officers may be called as adverse witnesses in a § 1983 action. *Ellis v. City of Chicago*, 667 F.2d 606 (7th Cir. 1981). In *Ellis*, the Seventh Circuit held that a police officer that was employed by the City of Chicago and involved in the incident at issue "clearly qualified" as a witness identified with an adverse party pursuant to Rule 611(c).

Here, all of the Chicago Police Officers expected to testify in this case were directly involved in the same incident and investigation as the Defendants. All were produced and represented at their depositions by the same assistant City of Chicago Corporation Counsel Attorneys that represent the remaining Defendants. Further, all are employed by the same municipal entity, the City of Chicago, who is a party in this case for purposes of indemnification. Thus, pursuant to Rule 611(c), Plaintiff should be allowed to treat all Chicago Police officers in this case as adverse witnesses.

<u>*Motion In Limine # 6*</u>

16

**Defendant Should Be Barred From Arguing Or Referencing Gun Violence Or Crime In General In The City Of Chicago.**

In this case the Defendants were investigating a specific incident hat occurred at the White Caste restaurant. Pursuant to Federal Rule of Evidence 402, evidence or arguments regarding "gun violence" or crime in general in the City of Chicago is irrelevant to the material issues involved in this case: 1) whether the defendants violated Plaintiff's due process rights, 2) had probable cause to initiate criminal proceedings against him, and/or 3) conspired to violate Mr. Myvett's rights.

Additionally, this evidence should be excluded pursuant to Federal Rule of Evidence 403 as it: 1) lacks any probative value to the issues before the jury; 2) creates the possibility of significant prejudice to the Plaintiff; and 3) would confuse or distract the jury from the issues in this case. As such, any argument or questioning of witnesses regarding gun violence or crime in general in the City of Chicago should be barred.

*Plaintiff's Motion in Limine #7*

**Defendants Should Be Barred From Any Questioning Regarding Or Introducing Any Evidence Regarding Street Gangs**

Defendants should be barred from any questioning, argument, reference or suggestion that the Plaintiff or any other person involved in this case was ever affiliated with the Black P-Stones or any other street gang. Plaintiff would also seek to bar any questioning, argument, evidence, photos, reference or suggestion concerning alleged gang tattoos of the Plaintiff (a crescent moon, a five-point star, a "BPS," and a "Death before Dishonor"), or any other witness, including Wilbur Jackson. Finally, Plaintiff would seek to bar any evidence or argument regarding the involvement of the Black P-

Stones in violent acts or possession of weapons in the City of Chicago. Defendants should be barred from introducing any of the aforementioned gang evidence because it is irrelevant and should be excluded pursuant to Federal Rules of Evidence 401 and 402. Even if relevant, any minimal probative value that evidence may possess is substantially outweighed by the prejudicial effect of such evidence, thereby rendering the evidence inadmissible. Such evidence would serve solely to inflame the passions of the jury and deny the Plaintiff a fair trial. Furthermore, this evidence is also inadmissible as an improper character attack upon the Plaintiff.

Evidence of alleged gang membership is routinely excluded. *Christmas v. City of Chicago*, 691 F. Supp. 2d 811, 817 (N.D. Ill. 2010). Courts have reasoned that there is always the possibility that a jury will attach a propensity for committing crimes to individuals affiliated with gangs or that a jury's negative feelings towards gangs will influence its verdict. *See United States v. Irvin*, 87 F.3d 860, 865–66 (7th Cir. 1996).

Here, there is no evidence of current gang affiliation to support any questioning or argument regarding this highly prejudicial topic. It is also irrelevant to the material issues involved in this case: 1) whether the defendants violated Plaintiff's due process rights, 2) had probable cause to initiate and continue criminal proceedings against him, and/or 3) conspired to violate his rights. Any questions regarding street gangs is based on speculation and conjecture and only meant to portray the Plaintiff or any other individuals in a false negative light.

In contrast to any theoretical minimal probative value, this evidence is highly prejudicial and inflammatory and, as such, the danger of unfair prejudice would substantially outweigh any probative value. The Seventh Circuit has repeatedly

recognized the dangers of admitting gang evidence of this sort. *United States v. Rodriquez*, 925 F.2d 1049, 1053 (7th Cir. 1001) ("[E]vidence of membership in a street gang is likely to be 'damaging to [a party] in the eyes of the jury.' "); *United States v. Lewis*, 910 F.2d 1367 (7th Cir. 1990) (recognizing that gangs have a very negative image and poor public relations). Because of these obvious and attendant prejudices that necessary accompany the admission of gang evidence, the Seventh Circuit has "required careful consideration by district courts in determining the admissibility of gang membership and gang activity evidence." *Irvin*, 87 F.3d at 865.

Almost every individual in society would be angered by the thought of gang membership, the violence associated with gangs, and the possession of semi-automatic weapons. This unduly prejudicial evidence would invite the jury to find against the Plaintiff based on factors that are not germane to the issues of this case; possibly denying him recovery solely because of the evidence that he was at one time connected to a gang. *See Irvin*, 87 F.3d at 865-66 ("Gangs generally arouse negative connotations and often invoke images of criminal activity and deviant behavior. There is always therefore the possibility that a jury will attach a propensity for committing crimes to defendants who are affiliated with gangs or that a jury's negative feelings toward gangs will influence its verdict."). Gang evidence would engender a result based on an improper emotional basis, or at the very least, such evidence would confuse the issues and mislead the jury to focus on collateral issues rather than the alleged actions of the defendant officers. *Irvin*, 87 F.3d at 866. Jurors would be hard-pressed to award damages to a known, former, or suspected gang member, even if they believed his civil rights were violated.

Finally, evidence of the Plaintiff's alleged gang involvement, and any link to gang related violence, would be inadmissible under Federal Rule of Evidence 404(b). A party cannot introduce evidence of an individual's other crimes, wrongs, or acts solely to prove the character of a person in order to show action in conformity therewith. Fed. R. Evid. 404(b). This gang evidence is classic negative character evidence and is not relevant to any material issue. Instead, its only use would be to impermissibly establish the general character of the Plaintiff. In a similar vein, any use of gang evidence regarding the individual with whom Plaintiff was arrested would prejudice the plaintiff as it would paint him with the same broad, and prejudicial, brush.

As such, questioning regarding gangs, gang affiliation should be barred pursuant to Federal Rules of Evidence 401, 402, 403 and 404. *See Charles v. Cotter,* 867 F. Supp. 648, 658 (N.D. Ill. 1994) (identifying section 1983 plaintiff "as a gang member is unfairly prejudicial insofar as it encourages the inference that Plaintiff is an evil and menacing person.").

### *Motion in Limine # 8*

**Defendants Should Be Barred From Making Comments Or Argument That Suggests That The Individual Defendants Would Be Personally Liable For A Compensatory Damage Award.**

Defendants should be barred from making any argument or suggestion to the jury that the Defendant officers would be personally liable for compensatory damages awarded as any such remarks would be misleading and highly prejudicial. The purpose of such a suggestion is to (falsely) lead the jury to believe that the individual defendants will be personally liable for any compensatory damages assessed against them. By statute and case law (see e.g. 745 ILCS 10/9-102, *Wilson v. City of Chicago*, 120 F.3d 681 (7th

Cir. 1997), the individual defendants are indemnified for any compensatory civil rights judgments entered against them. If any such remarks are allowed or made, Plaintiff requests the right to inform the jury that any and all compensatory damages will be paid by the City of Chicago.

<em><u>Motion in Limine #9</u></em>

**Defendants Should Be Barred From Introducing Evidence, Making Reference, Or Arguing Irrelevant Personal Details Of Plaintiff's Personal Life**

Plaintiff next moves to bar the Defendants from introducing into evidence or arguing any personal details from his life as a minor. Specifically, Plaintiff seeks to bar the following: 1) any evidence concerning the circumstances of Plaintiff's conception and birth out of wedlock; 2) any attendance problems in elementary and high school; 3) problems as a juvenile, including disciplinary problems and involvement with gangs; 4) any reference to Plaintiff spending any time in any juvenile correctional facility.

All of the aforementioned is irrelevant as it does not tend to make the existence of any material fact more or less likely and, as such, this evidence should be excluded pursuant to Federal Rules of Evidence 401 and 402. The evidence is completely unconnected to the issues involved in this case: 1) whether the defendants violated Plaintiff's due process rights, 2) had probable cause to initiate and continue criminal proceedings against him, and/or 3) conspired to violate Mr. Myvett's rights. This evidence would only serve to portray the Plaintiff in an unflattering light – as a troubled individual with a difficult childhood – and cannot

be credibly asserted to be relevant to any issue in this case. Moreover, to the extent that any of this evidence constitutes a juvenile adjudication, such evidence would be barred pursuant to Federal Rule of Evidence 609(d), which limits the use of such evidence to criminal cases.

Moreover, even if there is some minimal probative value, this evidence should still be excluded because the prejudicial effect of this evidence substantially outweighs any probative value. The time period involved with this evidence covered the years of the Plaintiff's minority – a significant amount of time prior to the incident at the White Castle. This type of evidence could be highly inflammatory and could cause the jury to view the Plaintiff in a lesser light and deem him unworthy of recovery, even if his rights were found to be violated. Also, such evidence could unduly and artificially reduce the amount of damages received by the Plaintiff in the event of recovery.

<u>*Plaintiff's Motion in Limine #10*</u>

**Defendants Should Be Barred From Introducing Evidence, Arguing Or Making Any Reference To The Criminal Background Or Alleged Criminal Behavior Of Wilbur Jackson, Any Prior Knowledge Of Wilbur Jackson From The Criminal Justice System, Or Wilbur Jackson's Nickname In Order To Paint The Plaintiff In A False Light *Via* Guilt By Association**

Defendants should be barred from introducing evidence or argument regarding Wilbur Jackson's criminal background as this information is irrelevant and would unfairly taint the Plaintiff through guilt by association. Wilbur Jackson's criminal history and any Defendants' knowledge of that history fail to

make the existence of any material fact either more or less likely. The focus of this case involves the investigation and charging of Paul Myvett – not Wilbur Jackson. The material issues are whether the Defendants violated Myvett's due process rights, maliciously prosecuted Myvett and conspired to violate Mr. Myvett's rights. There is no theory that would allow the Defendants to escape or reduce their liability by offering evidence that Wilbur Jackson had prior contact with the criminal justice system or that Defendant Heerdt knew him from a prior domestic assault case from a decade earlier. Nor would evidence that Wilbur Jackson's name was "out there in many circles of violence" or that his nickname was "Killer" permit Defendants to somehow justify or explain the actions that they took towards the Plaintiff. (Heerdt Dep., p. 81). This evidence is completely irrelevant and fails to meet the threshold admissibility requirements established in Federal Rules of Evidence 401 and 402.

Moreover, to the extent that Defendants seek to use any of Jackson's prior misdeeds, such evidence would also constitute an impermissible character attack on Plaintiff via guilt by association. If Defendants attempt to inextricably tie the Plaintiff to Wilbur Jackson and then introduce this irrelevant and negative information regarding Jackson, Defendants will effectively be smearing the Plaintiff with Jackson's mud, which would violate the spirit, if not the express provisions, of Federal Rule of Evidence 404(b), which precludes evidence of prior bad acts.

This evidence should also be excluded because its prejudicial effect substantially outweighs any minimal probative value of this evidence. Any such

evidence would falsely link the Plaintiff to Jackson's prior misdeeds through

innuendo and guilt by association, causing unfair and substantial prejudice. That

Wilbur Jackson and the Plaintiff knew each other and happened to be together on

that night does not permit Defendants to paint Plaintiff with the broad brush of

Jackson's prior misdeeds and reputation. Any such subtle smear campaign would

invite the jury to decide this case on factors other than on the merits of the case,

cause them to dislike or think less of the Plaintiff, result in a finding of no liability

even if Plaintiff's rights were violated and would preclude or substantially reduce

the amount of damages that would be recovered. As such, this evidence should

also be excluded pursuant to Federal Rule of Evidence 403.

### *Plaintiff's Motion in Limine #11*

**Defendants Should Be Barred From Introducing Any Evidence, Arguing Or Making Reference To The Plaintiff As "Little Paulie," That Defendants Had Any Prior Contact Or Knowledge Of Plaintiff, Or That Plaintiff Was Allegedly A Suspect In An Open Murder Investigation.**

Defendants should be barred from portraying the Plaintiff as a known entity in the

criminal justice system by referring to him as "Little Paulie," referencing any prior

contact or knowledge of the Plaintiff, or mentioning that his name was associated with

any open murder investigation. This information has no probative value to the material

issues in this case and would only serve to prejudice the Plaintiff by portraying him in a

negative light.

First, this information is irrelevant to the incident that occurred in the White

Castle or the ensuing investigation. That the Plaintiff was allegedly known to the at least

one of the Defendants from the criminal justice system is not relevant to whether

Plaintiff's rights were violated, particularly where Defendant Heerdt established at his deposition that he had " no specific belief in any prior criminal activity involving the plaintiff" and even though "Little Paulie's" name was "bounced around," it did not influence influence the investigation. (Heerdt Dep., pp. 82-83).  By Defendants' own admission, this information was not relevant to any issue involved in the investigation of the White Castle – the conduct that is at the core of this case.  Such evidence would serve no other function than that of an impermissible character attack that should be precluded pursuant to Federal Rule of Evidence 404(b). As such, this evidence should be excluded as irrelevant pursuant to Federal Rule of Evidence 401 and 402 and as inadmissible evidence of prior bad acts under Rule 404(b).

Moreover, this evidence should also be excluded because the prejudicial effect of the evidence substantially outweighs any probative value.  In particular, any testimony that the Plaintiff was a suspect in an open murder investigation would be highly inflammatory and would singlehandedly deny the Plaintiff an opportunity at a fair trial. It would be impossible for the jury to set aside such a sensational fact – even if it is explained to them that such fact had no connection with the incident at the White Castle or the subsequent investigation. This is exactly the type of collateral fact that would make the jury speculate, dislike the Plaintiff, decide the case on factors other than its merits, and preclude or substantially reduce the recovery of any damages.  As such, this evidence should also be excluded pursuant to Federal Rule of Evidence 403.

*Motion in Limine # 12*

**Defendants Should Be Barred From Introducing Any Evidence Or Testimony Purporting To Establish The "Right Way" Or "Correct Method" Of Conducting A Show-Up Procedure**

Plaintiff next moves to exclude any improper opinion testimony from any defense witness purporting to establish the "right way" or "correct method" or similar stamp of approval for conducting show-up identifications based upon the contention that any of the Defendants in this case conducted such show procedures in compliance with or consistent with the laws of the United States and Illinois and/or any Chicago Police Department policy or guideline. Such testimony should be excluded because it (1) is irrelevant and improper opinion testimony that lacks proper foundation; (2) infringes on the province of the jury; and (3) constitutes an improper attempt to bolster the credibility of the Defendants. Any opinion testimony by any defense witness that any of the Defendants' conduct in conducting the show-up identification procedures was proper and in accordance with the law or Chicago Police Department policies and procedures should be excluded as irrelevant. The issue for the jury in this case is whether the Defendants' violated or conspired to violate the plaintiff's due process rights under the totality of the circumstances. As such, whether or not an expert witness or another Chicago police officer believes the show-up procedures complied with the law or the Chicago Police Department's policies and procedures is irrelevant.

Such opinion testimony also improperly encroaches on the decision making duty of the jury. It is the function of the trier of fact to access the credibility of witnesses in this case and make the ultimate determination as to whether the Defendants violated or conspired to violate the Plaintiff's due process rights. The opinion of other defense

witnesses predicated upon purported compliance with the law or Chicago Police Department or other policies only serves to improperly vouch for the credibility of the Defendants. It is well established that the assessment of a witness's credibility is squarely within the province of the jury. Opinion testimony that the Defendants acted the "right way" or otherwise in compliance with the law or Chicago Police Department policies and procedures is irrelevant to the jury's determination on the issues in this case.

### *Motion in Limine #13*

**Defendants Should Be Barred From Introducing Any Evidence Or Testimony That Police Have A Dangerous Or Difficult Job.**

Plaintiff anticipates that Defendants may seek to engender sympathy generally regarding the dangerous or difficult nature of being a police officer. This type of evidence or testimony should be barred. Evidence about how dangerous or difficult being a police officer is not probative of any material issue in this case. Further, it is designed to merely engender sympathy for the Defendants. As such, this type of evidence, argument, or innuendo should be barred under Federal Rules of Evidence 401, 402 and 403.

### *Motion in Limine #14*

**Defense counsel should be barred from arguing that "Anyone can file a lawsuit" as it is an inaccurate statement unsupported by any evidence**

A stock argument by the City of Chicago's Corporation Counsel's Office in civil rights cases is to tell the jury in summation that "anyone can file a lawsuit." Defense attorneys often then launch into a litany of the "benefits" the plaintiff receives from merely filing a complaint. This type of argument is inaccurate and prejudicial on numerous levels. First of all, it is an inaccurate statement of the law. As the Court is

well aware, not every lawsuit reaches a jury. Civil lawsuits in adequately pled are subject to motions to dismiss pursuant to F.R.E. 12(b). Defendants in civil rights cases may also be entitled to qualified immunity as a shield to civil liability in 1983 cases. Lawsuits can also get thrown out on summary judgment pursuant to F.R.E. 56. Lastly, a civil case can also get directed out at trial at the close of the plaintiff's evidence. In short, merely filing a lawsuit is no guarantee to get a case before a jury.

At its core, any argument in this regard is an improper attempt to portray the plaintiff as a litigious con-man, looking for an easy payday. Such portrayal is a negative character attack, unsupported by any evidence, and prohibited by Rule 404(b). The "anyone can file a lawsuit" type argument is designed to tap into juror's negative association with frivolous lawsuits. Such argument is unsupported by any evidence in this case and intentionally attempts to mislead the jury into believing every single lawsuit filed gets all the way to a jury. That assertion is simply false, misleading and, therefore, should be barred.

### *Motion in Limine #15*

**Motion to bar any evidence, argument or inference that the Defendants would suffer any negative consequence in their professional career as a result of the outcome of this trial**

Any argument or inference that a verdict for the Plaintiff would result in any negative consequences for the Defendant Officers career or job security should be barred. There is no evidence in this case that any of the individual Defendants would suffer any negative consequence in their professional careers as law enforcement officers as a result of the outcome of this trial.

At its core, any argument or suggestion to the jury that the officers would not "risk their career or their pension" to frame the Plaintiff is merely a play for sympathy with the jury without any evidentiary support. To the contrary, there is no evidence that any of the individual Defendants have suffered any kind of setback in their careers as a result of this lawsuit. The fact of the matter is that Defendants Almdale, Heerdt and Barker have had long careers in the Chicago Police Department, despite numerous citizen complaints and previous lawsuits. There is no evidence that any of the defendants have been warned that there would be any negative consequences if the jury were to award damages to the Plaintiff. For example, there is no evidence that Detective Almdale will be demoted back to patrol if a jury concludes that he fabricated evidence in order to have the Plaintiff charged with the shooting of Mr. Allen.

Nor is there any evidence that the Defendants will be shunned by their fellow officers or supervisors or passed up for promotions because of the outcome of this case. To the contrary, there is absolutely no evidence that there will be any negative consequences to any of the Defendants as a result of this lawsuit. Any evidence or argument that jobs or careers are in jeopardy is prejudicial and nothing more than speculation. As such, any argument that the Defendants job, career or reputation is at stake should be barred.

<u>*Motion in Limine # 16*</u>
**The Jury Should Be Instructed On The Issues Of Due Process, Conspiracy, And Malicious Prosecution And The Preponderance Of Evidence Prior To Opening Statements.**

Plaintiff respectfully requests this Court to instruct the jury on the issues of due process, conspiracy, malicious prosecution and the preponderance of the evidence prior to opening statements. This practice has been recommended by former Chief Judge

Holderman and Plaintiff's counsel has personally experienced it in cases before District Court Judge Kennelly (*Anderson v. Dercola, et al*., Case No. 08-C-6622); Judge Feinerman (*Rachubinski v. Herman, et al*., Case No. 10-C-3793), Judge Pallmeyer (*Morgan v. Stubblefield,* Case No. 10-C-4138); former Chief Judge Holderman (*Edwards, et al. v. Haritos,* Case No. 09-C-1726); and Judge Gottschall (*Davies v. Benbenek*, 12 CR 45). Instructing the jury on the elements of Plaintiff's claims will provide the jury with a roadmap to assist them in its fact-finding mission. Jurors will know what to look for as the trial unfolds and this should be a benefit to both parties.

### *Motion in Limine # 17*

### The Jury Should Be Allowed To Submit Written Questions Following The Examination Of Each Witness

Plaintiff respectfully requests this Court to allow members of the jury to submit written questions following the examination of each witness. This practice has also been recommended by former Chief Judge Holderman and Plaintiff's counsel has personally experienced it in cases before District Court Judges Kennelly (*Anderson v. Dercola, et al.,* case No. 08-C-6622), Judge Feinerman (*Rachubinski v. Herman, et al.,* case No. 10-C-3793), Judge Pallmeyer (*Morgan v. Stubblefield,* case No. 10-C-4138), J. Gottschall, *(Davies v. Benbenek*, case no. 12 CV 45); as well as Chief Judge Holderman (*Orlando Edwards, et al. v. Haritos, et al.,* Case No. 09-C-1726). By allowing jurors to submit written questions after the examination of a witness, the jury becomes more active and engaged in the trial process, which should benefit both parties.

Respectfully submitted,

/s/ Jeffrey J. Neslund
Jeffrey J. Neslund, One of Plaintiff's Attorneys


Jeffrey J. Neslund                         Robert Robertson
Law Offices of Jeffrey J. Neslund          Law Offices of Robert Robertson
20 North Wacker Drive                      20 N. Wacker Dr.
Suite 3710                                 Suite 3710
Chicago, Illinois 60606                    Chicago, Illinois 60606
(312) 223-1100                             312-223-8600


Dated:  January 29, 2016