# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| PAUL MYVETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12 C 09464 |
| | ) | |
| CHICAGO POLICE DETECTIVE EDWARD | ) | Judge John J. Tharp, Jr. |
| HEERDT, Star No. 20598, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants Edward Heerdt, Lloyd Almdale, and the City of Chicago (collectively "Defendants"), by and through their undersigned attorney, hereby move this Court to enter judgment in their favor as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. In support of their motion, Defendants state:

## LEGAL STANDARD

Rule 50(b) provides that if the motion for judgment as a matter of law brought pursuant to Rule 50(a) is not granted by the Court before the case is submitted to the jury, as was the case here, the movant may file a renewed motion, and the Court may enter judgment as a matter of law. *Id.* "In ruling on such a motion, the court should disregard any jury determination for which there is no legally sufficient evidentiary basis enabling a reasonable jury to make it." *Id.* advisory committee notes. "In other words, the question is simply whether the evidence as a whole, when combined with all reasonable inferences drawn from that evidence, is sufficient to allow a reasonable jury to find in favor of the plaintiff." *Hall v. Forest River, Inc.*, 536 F. 3d 615, 619 (7th Cir. 2008). In essence, the motion should be granted when no rational jury could find in favor of the Plaintiff. *Venson v. Altamirano*, 749 F.3d 641, 646 (7th Cir. 2014). A mere

scintilla of evidence will not suffice to overcome a motion for judgment as a matter of law.

*Terrell v. Vill. of Univ. Park,* CIV. A. 92-C-3320, 1994 WL 30960, at *1 (N.D. Ill. Feb. 1, 1994).

Here, the evidence presented by Plaintiff at trial is insufficient to establish a due process fabrication claim and a malicious prosecution claim. Even accepting Plaintiff's version of the events, no reasonable jury could find for Plaintiff on either of these claims.

## ARGUMENT

**I. Plaintiff's Evidence Failed to Establish a Due Process Claim.**

**A. Plaintiff cannot prove a due process violation as a matter of law.**

Plaintiff's due process claim fails as a matter of law because he did not prove that any alleged fabricated evidence was used against him to secure a conviction in his criminal case. In *White v. City of Chicago*, No. 14-cv-9915, 2016 WL 640523 (Feb. 18, 2016) (J. Feinerman), an opinion issued during the course of this trial, Judge Fienerman thoroughly analyzed the most up-todate case law concerning fabrication of evidence due process claims. Applying the analysis in *White*, it is apparent that because Plaintiff was never convicted in the underlying criminal case, he received all the procedural process that he was due, and cannot, as a matter of law, prove a constitutional violation based upon fabricated evidence.

As this Court is aware from its review of the cases discussed on summary judgment, the validity and contours of a fabrication of evidence due process claim against police officers is, at best, murky in this Circuit. Judge Dow explained in *Bianchi v. McQueen* that "[u]ntil recently, it seemed to be settled law in the Seventh Circuit that allegations of evidence fabrication do not state a cognizable due process claim." No. 12-cv-364, 2014 WL 700628, *9 (Feb. 24, 2014). The confusion arises because in *Newsome v. McCabe*, the Court held that "[t]he existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution." 256

F.3d 747, 750 (7th Cir. 2001). Using that reasoning, and relying on *Newsome*, the Seventh

Circuit upheld dismissal of fabrication of evidence claims, finding those claims sounded in

malicious prosecution, and that the existence of a state law claim for malicious prosecution in

Illinois knocked out the plaintiffs' due process claims. *See Brooks v. City of Chicago,* 564 F.3d

830, 833 (7th Cir. 2009) (holding plaintiff's claims that officers brought charges against him

based on false evidence and testimony sounded in malicious prosecution rather than a due

process violation), and *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010) (barring plaintiff's due

process claim based on fabricated evidence); *see also Buckley v. Fitzsimmons*, 20 F.3d 789, 795-

96, (7th Cir. 1994) (holding prosecutor who fabricates evidence during the criminal investigation

is protected by qualified immunity because it does not violate a clearly established constitutional

right). These cases suggest that fabricated evidence by a police officer does not amount to a

constitutional due process violation. *See Stinson v. Gauger*, 799 F.3d 833, 842 (7th Cir. 2015)

("a line of cases in this circuit have squarely held that a police officer's fabrication of

evidence…is not actionable as a violation of due process") (r'hrg *en banc* granted).

Subsequently, without specifically discussing, *Newsome*, *Fox*, or *Brooks*, the Seventh

Circuit stated in *Whitlock v. Brueggemann* that "we have consistently held that a police officer

who manufactures false evidence against a criminal defendant violates due process if that

evidence is later used to deprive the defendant of her liberty in some way." 682 F.3d 567, 580

(7th Cir. 2012).

Since *Whitlock*, the Seventh Circuit has addressed other fabrication of evidence due

process claims and reaffirmed the statement in *Whitlock*. The Court has also made a distinction

between cases where fabricated evidence was used to secure a wrongful conviction from those

where the defendant was acquitted at trial and released after arrest. *Alexander v. McKinney*, 692

F. 3d 553 (7th Cir. 2012); *Saunders-El v. Rhode*, 778 F.3d 556 (7th Cir. 2015). Nevertheless, the Court has not specifically overruled *Newsome* or its progeny. To the contrary, several cases suggest that line of cases is still good law. *White v. City of Chicago*, No. 14-cv-9915, 2016 WL 640523, *6 (Feb. 18, 2016) (J. Feinerman) (collecting cases). Taken together, the case law suggests that the two seemingly conflicting lines of cases can, and should, be reconciled.

At the time of summary judgment, no case had thoroughly addressed the conflict between *Newsome* and its progeny and *Whitlock* as it relates to a claim like Plaintiff's. Judge Dow attempted to reconcile the cases in *Bianchi v. McQueen*, concluding that *Whitlock* suggests that one's due process rights are only violated if the evidence is used to secure a wrongful conviction. 2014 WL 700628, *10. However, *Bianchi* stopped short of addressing the situation presented in this case, where a criminal defendant is incarcerated prior to trial but ultimately acquitted.

The reasoning set forth in *White v. City of Chicago*, however, effectively reconciles both the *Newsome* line of cases and the *Whitlock* line of cases. Neither the parties nor the Court had the benefit of this analysis on summary judgment. Critically, the factual scenario in *White* is identical to this case.

In *White*, the plaintiff alleged a due process violation based on fabricated police reports. The plaintiff was ultimately acquitted but argued that as a result of the fabricated police reports, he was deprived of his liberty during the 16 months he was incarcerated leading up to trial. *White,* 2016 WL 640523, *1. The Court acknowledged that the plaintiff suffered a deprivation of liberty from his pretrial incarceration, but held the *Whitlock* line of cases did not apply to support his due process claim. *Id*. at 6. The Court distinguished *Whitlock* from *Brooks* and *Fox* because in *Brooks* and *Fox*, the plaintiffs were not convicted. *Id*. The Court found that while the *Whitlock* plaintiff suffered a due process violation because his trial was made fundamentally

unfair leading to his wrongful conviction, the plaintiffs in *Brooks* and *Fox* were acquitted, and therefore suffered no due process violation despite the fabricated evidence. *Id.* Accordingly, while the plaintiff in *White* was incarcerated prior to trial, his due process rights were not infringed since he was not convicted. Instead, the Court found he was received all the process he was due and that his allegations were no different than a malicious prosecution claim. *Id.*

The Court in *White* acknowledged that the broad sweeping language in *Whitlock* seemed to cover the scenario where an individual is incarcerated pre-acquittal, but concluded *Whitlock* must be read specifically in the context of its facts. *Id.* at *6. In examining the facts in *White*, the Court determined *Brooks* and *Fox* were on point, and *Whitlock* was distinguishable. *Id.* at *8. Because the Court found *Fox* and *Brooks* still good law, it was duty bound to apply the most factually applicable line of cases. *Id.* Ultimately, the Court concluded that without a conviction, White's allegations sounded in malicious prosecution and, therefore, pursuant to *Brooks* and *Fox*, did not amount to a due process violation in *Whitlock*. *Id.* at *6.

The fabrication claim in *White* is factually identical to the claim made in this case. Like *White*, Plaintiff argues he was wrongfully prosecuted as a result of fabricated police reports. Consequently, his claim, just like the plaintiff in *White*, is indistinguishable from a malicious prosecution claim. Therefore, because the evidence was not used to secure a wrongful conviction, *Fox* and *Brooks* apply to his case rather than the broad sweeping language in *Whitlock*. Accordingly, Plaintiff's fabrication of evidence claim fails as a matter of law.

**B.      Plaintiff presented no evidence that any alleged fabricated evidence deprived him of his liberty.**

Plaintiff's due process claim rests on the allegation that Defendants "fabricated evidence." Such an allegation is only actionable as a due process claim when the fabricated evidence was used against Plaintiff to deprive him of his liberty. *See Saunders-El*, 778 F.3d at

561; *Alexander*, 692 F.3d at 557. Without that, Plaintiff's constitutional rights have not been violated. *Id.* Here, Plaintiff spent the entirety of the trial attempting to persuade the jury that alleged errors in police reports were fabricated; however, Plaintiff presented no evidence linking the police reports to his deprivation of liberty. Without establishing that causal connection, Plaintiff's due process claim fails as a matter of law.

Fundamentally, "not every act of evidence fabrication offends one's due process rights." *Saunders-El*, 778 F.3d at 560. In *Alexander*, the plaintiff alleged that the prosecutor and investigators manufactured evidence and brought "trumped up" charges in his criminal case. The Court reasoned, however, that because the plaintiff was acquitted at trial and was released on bond the day after his arrest, his liberty was not deprived. *Alexander v. McKinney*, 692 F. 3d at 557. Without the requisite liberty deprivation caused by the fabricated evidence, the plaintiff in *Alexander* could not state a due process claim. *Id.*

Likewise, in *Saunders-El*, the plaintiff alleged that the police fabricated evidence against him, but he was acquitted at trial and released on bond after his arrest. 778 F.3d at 558-59. The Court held that the plaintiff's claim fell squarely within the holding in *Alexander*. *Id.* Because the plaintiff could not prove his liberty was deprived as a result of the fabricated evidence, he could not make out a due process claim. *Id.* at 561.

Further, in *White*, the Court held a plaintiff cannot establish the causal connection between fabricated evidence and deprivation of liberty without proving the evidence was used to secure his conviction. Indeed, while pretrial incarceration is certainly a deprivation of liberty, it would be a strange constitutional principle if the existence of a due process claim for an acquitted defendant turns on whether that defendant was financially able to post bond or not.

In any event, the conclusion that a plaintiff's due process claim necessarily depends on whether the fabricated evidence was used to secure the plaintiff's liberty deprivation has proved essential to the Seventh Circuit's decisions on this issue. In *Whitlock*, the Court explained that if an officer fabricates evidence and puts that evidence in a drawer never to be used again, then no due process violation occurs. 682 F.3d at 582. "In other words, in such a case the plaintiff could not establish one of the necessary elements of a constitutional tort: that the officer's act (fabrication) caused any injury." *Id*. Rather, a constitutional claim only arises when the fabrication causes the infringement of someone's liberty interest. *Id*. Similarly, in *Fields II*, the Court took great to care to emphasize that the fabricated evidence must be used against the criminal defendant resulting in an injury. The Court explained that "if the evidence hadn't been used against the defendant, he would not have been harmed by it, and without harm there is, as noted earlier, no tort." *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014). This Court even relied on that reasoning on summary judgment, holding that Plaintiff can establish a due process claim "if he can show that [his] incarceration was *caused* by fabricated evidence." (Dkt. 96, p. 6) (emphasis added).

Consequently, unless Plaintiff can present evidence that the fabricated police reports were used against him in a way that resulted in his liberty being deprived, his due process claim fails. *See Stinson v. Guager*, 799 F.3d 833, 841 (7th Cir. 2015) (r'hrg *en banc* granted) (stating "a prosecutor who fabricates evidence against a suspect and later uses that evidence to convict him violates due process"); *Bianchi v. McQueen*, No. 12-c-364, 2014 WL 700628, *11 (Feb, 24, 2014) (J. Dow) ("a plaintiff's due process rights are not violated unless the fabricated evidence is used to wrongfully convict or incarcerate him," and "an acquitted defendant harmed by fabricated evidence only may bring a state law malicious prosecution claim (without a

conviction, his due process rights have not been violated)"); *Starks v. City of Waukegan*, No. 09-c-348, 2015 WL 5012131, *7 (July 24, 2015) (J. Fienerman) (emphasizing that fabrication of evidence must have been used against the defendant, stating "to violate due process, the falsified evidence must have 'involved not merely the fabrication, but the introduction of the fabricated evidence at the criminal defendants trial…'", and holding that the alleged fabricated evidence was not used as evidence against the plaintiff).

Here, setting aside the parties' dispute regarding whether evidence was fabricated, Plaintiff has not presented any evidence that the alleged fabricated police reports were used to deprive him of his liberty. While Plaintiff was incarcerated as a result of his arrest, evidence of what effect, if any, the fabrication in the police reports had on his incarceration was not proffered.

Plaintiff argued that the assistant state's attorney ("ASA") relied upon the fabricated police reports at Plaintiff's bond hearing.[1] Relying upon the transcript of the bond hearing only, Plaintiff elicited testimony to establish that the ASA told the Court that Plaintiff was the shooter, which according to Plaintiff, was an error, since Jackson was the shooter. However, Plaintiff presented no evidence that any of the information used by the ASA at the bond hearing came from any police reports prepared by either Defendant Heerdt or Defendant Almdale. Moreover, he presented no evidence that being identified as the shooter had any effect on the Court's decision to set bond. Plaintiff argued that because his bond was set higher than Jackson's, the Court must have been influenced by the fact that Plaintiff was identified as the shooter. But that argument was based upon pure speculation. He did not present any evidence of the Court's

---

[1] Defendants have not ordered transcripts from the trial for purposes of this motion. However, Defendants will supplement this motion with citations to the record if that will aid in the Court's review.

reasoning for setting the bond amount. He did not present a written opinion from the Court explaining his decision. Nor can such a conclusion be inferred because the ASA did not even make an argument to the Court that Plaintiff's bond should be higher; he simply reported the facts as he understood them to the Court. Ultimately, Plaintiff did not present a single piece of evidence or document to show the jury that any fabricated report was used against Plaintiff to incarcerate him.

What's more, there was additional information provided to the Court at the initial bond hearing that could have influenced the Court's decision, including Plaintiff's criminal history and the fact that he was out on bond for a previous arrest. Therefore, there is no way for the jury to sift out what factor was important to the Court's decision making process and what was not. And, even if Plaintiff had not been labeled as the shooter at that hearing, his felony arrest served as violation of his bail conditions on his previous case, so his bail would have been revoked regardless.

Even more fundamentally, the jury was presented with *no* evidence regarding what the ASA actually relied upon during the bond hearing, let alone the fact that he relied upon the alleged fabricated police reports. To the contrary, the ASA informed the Court that the shooting occurred in the victim's home. That information is not contained in *any* of police reports. Because the ASA could not have made that error by reviewing the police reports Defendants prepared, it undermines Plaintiff's theory that the information provided to the bond Court came from those reports. Perhaps, instead, the ASA's paperwork was jumbled and he confused this case with another one.

In any event, the undisputed evidence established that the information provided at the initial bond Court hearing that Plaintiff was the shooter was inconsequential to his deprivation of

liberty. At the *second* bond hearing, that information was corrected, and it had no effect on Plaintiff's bond amount. After hearing argument from Plaintiff's counsel that Plaintiff was not the shooter, the Court determined that Plaintiff nevertheless appeared to have been involved in the shooting in some way. The Court then kept Plaintiff's bond amount the *same*. There is no basis, therefore, for a jury to conclude that the fabricated police reports resulted in Plaintiff's liberty being deprived.

Plaintiff will likely respond that but-for the fabrication in the reports, Plaintiff would have never been prosecuted. That is not true. ASA Repella testified that she did not rely on the police reports to pursue the prosecution. Instead, she interviewed witnesses and evaluated the evidence on her own. She relied on her own independent judgment rather than what was contained in the police reports in pursuing the prosecution. Further, ASA Repella testified that if she determined that she could not sustain her burden of proof, she would dismiss the case. She did not. In fact, she opposed the motion for directed verdict. Plaintiff did not dispute any of this testimony.

More importantly, Plaintiff's argument conflates the standard for a due process claim with that of a malicious prosecution claim. In fact, in the rebuttal closing argument, Plaintiff's counsel argued that Plaintiff was not complaining that because his bond was set high his constitutional rights were violated; he was complaining that he should not have been charged at all. That argument sounds in malicious prosecution, not due process. Critically, they are two distinct causes of action. The difference between a due process claim and one that sounds only in malicious prosecution is that the fabricated evidence must have been *used* against the Plaintiff to *deprive him of his liberty*. It is the using of the evidence that makes the process fundamentally unfair. And, Plaintiff is only injured if the evidence is what deprives him of his liberty. Without

those crucial elements, Plaintiff's factual allegations can only support a state law claim for malicious prosecution and not a §1983 constitutional claim. *See Newsome, Fox, Brooks, Saunders-El, Alexander, supra.*

Ultimately, plaintiff has the burden of production in this case, and on this issue he has failed to provide any evidence that the alleged fabrication in the police reports in way resulted in his deprivation of liberty. For that reason, judgment should be entered against him on this claim.

## II.     Plaintiff's Malicious Prosecution Claim Fails.

Plaintiff's malicious prosecution claim fails as a matter of law because he has not provided an evidentiary basis that the Defendants lacked probable cause to pursue the prosecution against him.

Probable cause is an absolute bar to a malicious prosecution claim. *Seiser v. City of Chicago*, 762 F.3d 647, 659 (7th Cir. 2014). For purposes of probable cause, it is legally sufficient if the defendants have an "honest belief that the accused is probably guilty of the offense." *See* Dkt. 96 at p. 16 (citing *Kim v. City of Chicago*, 368 Ill. App. 3d 648, 654) (1st Dist. 2006). "It is the state of mind of the person commencing the prosecution that is at issue— not the actual facts of the case or the guilt or innocence of the accused." *Sang Ken Kim v. City of Chicago,* 368 Ill. App. 3d 648, 654 (Ill.App.Ct.2006). Indeed, probable cause is a low burden. "The officers must have more than a bare suspicion that they have the right guy, but they need not have enough evidence to support a conviction or even to show that their belief is more likely true than false." *Fox v. Hayes*, 600 F.3d 819, 833–34 (7th Cir.2010).

Further, the law does not require that police officers conduct "an incredibly detailed investigation at the probable cause stage." *Spiegel v. Cortese*, 196 F.3d 717, 725 (7th Cir. 1999).

"The credibility of a putative victim or witness is a question, not for police officers in their discharge of their considerable duties, but for a jury in a criminal trial." *Id.*

In this case, the evidence at trial showed that the Defendants had probable cause to charge Plaintiff. Plaintiff admitted that he told the police that he went to the White Castle with his friend, Wilbur Jackson. Plaintiff admitted that he was involved in the fight at White Castle. At the time of the shooting, the victim reported that there were two people involved: the shooter, who Plaintiff's counsel admitted was Jackson,[2] and one other person struggling for the gun, who the victim could not identify. Plaintiff was then seen walking out of the White Castle with Jackson immediately after the shooting. He was the only person with Jackson at that time. As they were leaving, Plaintiff was overheard by Corbello saying to Jackson, "Be cool, man, be cool." Plaintiff left the scene of the crime with Jackson – the shooter – and no one else. Plaintiff was with Jackson when they were apprehended by police just minutes after the shooting. There was no other person with Plaintiff and Jackson when their vehicle was pulled over.

Moreover, the gun was not recovered at the scene of the crime. Logically, it is reasonable to assume the gun left the White Castle with the shooter. However, the gun was not recovered in the car with Jackson and Plaintiff. A reasonable officer could presume that *both* Jackson and Plaintiff, fleeing the scene of the crime, disposed of the gun after they left the White Castle and before they were pulled over by police. Quite clearly, such conduct is consciousness of guilt on the part of Plaintiff indicating his criminal involvement in the shooting.

Furthermore, the unrebutted testimony of ASA Repella established that there was probable cause for the prosecution. ASA Repella testified that she was involved in the

---

[2] As this Court will recall, Plaintiff's counsel conceded in his opening statement that Jackson as "properly convicted" of the Allen shooting.

prosecution from the beginning. She made the decision to proceed by way of the grand jury after the preliminary hearing. She further testified that during the approximate one year preceding the criminal prosecution, she personally interviewed the witnesses. She testified that at any point in time she could dismiss or abandon the prosecution if she felt she could not sustain her burden of proof. She even argued in opposition to Plaintiff's motion for a directed finding.

Therefore, taking all these facts together, no reasonable jury could conclude that probable cause was lacking. Defendants had a reasonable belief that Jackson was the shooter and that Plaintiff, his friend and the only other person with him, was the other individual with the victim struggling for the gun. That belief is further supported by ASA Repella's testimony regarding her decision to pursue the prosecution.

### III. Defendants are Entitled to Qualified Immunity.

"[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). In determining whether qualified immunity applies, the Court considers (1) whether the plaintiff has asserted a violation for a federal constitutional right, and (2) "whether the constitutional standards implicated were clearly established at the time in question." *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999). "Although qualified immunity is a defense to a §1983 suit, the burden of meeting the elements of this two-part test rests on the plaintiff. *Id.* (citing *Eversole v. Steele*, 59 F.3d 710, 717 (7th Cir. 1995).

While cases such as *Whitlock* and *Fields II* broadly state that prosecutors who fabricate evidence are not entitled to qualified immunity, the Seventh Circuit has not explicitly held that qualified immunity is inapplicable to the police officers who fabricate evidence. *See Stinson v.*

*Guager*, 799 F. 3d 833, 842 (7th Cir. 2015) (r'hrg *en banc* granted). To be sure, no Seventh Circuit case has stated that qualified immunity does not apply to police officers who merely fabricate reports in cases that do not result in a conviction.

Critically, in *Whitlock* and *Fields*, the evidence that was alleged to have been fabricated was actual witness testimony. In both cases, the defendants were alleged to have coerced witnesses to provide statements that they knew to be untrue. In this case, the only evidence introduced by Plaintiff is that the defendants fabricated *reports* of what the witnesses told them. There was no evidence presented that a single witness's in court testimony was untruthful, coerced, or otherwise influenced by Defendants. As this Court is aware, police reports are not evidence. Rather they are hearsay and obviously no substitute for testimony from an actual witness. *See Taylor v. City of Chicago*, 114 Ill. App. 3d 715, 70 Ill. Dec. 398, 449 N.E.2d 272 (1st Dist. 1983) (Police reports are generally considered inadmissible hearsay). Plus, Courts often discount the evidentiary value of police reports because they "lack indicia of trustworthiness and reliability" of other governmental documents. *See e.g. People v. Ullrich*, 328 Ill. App. 3d 811, 820, 767 N.E.2d 411, 418 (2002); *see also* F. R. Evid. 803, Advisory Committee Note to Paragraph 8 (police reports are generally excluded as hearsay).

Accordingly, *Whitlock* and *Fields* cannot be read so broadly as to include police officers fabricating police reports since they are not type of "evidence" contemplated by those cases. To hold otherwise would mean officers are subject to liability any time the plaintiff alleges an error in a report is an intentional fabrication rather than a routine mistake, even, as in this case, when those reports are reports are never introduced as evidence against the plaintiff. Police officers, however, know that their reports are not evidence; they have to actually go to court to testify rather than just submit their reports. Further, because they have experience going to court, they

know that what is stated in the police reports does not determine, change, or substitute the testimony of a live witness. No reasonable officer, therefore, could anticipate that fabricating a police report – that he knows will never be used as evidence – could violate a defendant's clearly established constitutional rights. For that reason, Defendants should be granted qualified immunity.

WHEREFORE, for the foregoing reasons, Defendants respectfully request this Court enter an order granting judgment as a matter in of law in favor of Defendants for all of Plaintiff's claims.

Respectfully submitted,

EDWARD HEERDT, LLOYD ALMDALE,
and THE CITY OF CHICAGO

By:   *s/ Eileen E. Rosen*
One of their Attorneys

Eileen E. Rosen
Rock Fusco & Connelly, LLC
321 North Clark Street
Suite 2200
Chicago, Illinois 60654
(312) 494-1000
erosen@rfclaw.com